## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-178 (JMC)** |
| **v.** | : | |
| | : | |
| **DONTE MINTZ,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Donte Mintz to a sentence at or close to the bottom of the Guidelines range, followed by 10 years of supervised release. The government also requests that the Defendant be ordered to pay mandatory restitution to several of the known victims identified in this case.

### I.    Factual and Procedural Background

On October 13, 2020, an employee from Dropbox reported to the National Center for Missing and Exploited Children ("NCMEC") that there was suspected child pornography (also known as "child sex abuse material" or "CSAM") found on its servers. *See* Presentence Investigation Report ("PSR") ¶ 15. The files containing suspected CSAM were uploaded by Defendant Donte Mintz ("Mintz"). *Id.*

Law enforcement reviewed the video file, which was approximately 3 minutes and 34 seconds long. *Id.* ¶ 16. The video depicts two prepubescent children, a boy dressed only in pants, and a girl wearing what appears to be a bathing suit. *Id.* In the video, both children undress, and their genitals are visible. *Id.* The little boy then appears to place his penis into the little girl's anus.

1

*Id.* Portions of the video show the little girl laying down on the bed with her legs in the air. *Id.* The little boy engages in actual or simulated sexual intercourse with the little girl. *Id.*

On November 11, 2020, an employee with KIK reported to NCMEC that suspected CSAM had been found on its servers. *Id.* ¶ 17. KIK reported that the user of this first KIK account – Defendant Donte Mintz – sent the CSAM to other users via private chat message on or about October 26, 2020. *Id.*

Law enforcement reviewed one of the two videos that KIK submitted to NCMEC, which is two minutes in length, and is a compilation video depicting prepubescent little girls engaging in sexually explicit conduct to include sexual acts and contacts, as well as the lascivious display of their genitalia. *Id.*

On January 13, 2021, an employee with KIK reported that suspected child sex abuse materials had been found on its servers, uploaded by another KIK account (also utilized by Defendant Mintz). *Id.* ¶ 18. KIK reported that this KIK account user (Defendant Mintz) sent CSAM to other users via private chat message between the dates of December 21, 2020 and December 24, 2020. *Id.* KIK also reported that this user uploaded the child sex abuse materials utilizing an IP address linked by subpoenaed RCN Telecom subscriber information to Defendant Mintz. *Id.* This second KIK account was associated with the same email address that Defendant Mintz used with his Dropbox account described above. *Id.*

Law enforcement reviewed the CSAM that had been shared on KIK. A description of some of the videos is as follows:

     a.    5045000a-01bd-4137-b6e6-2a266423d474.mp4: A video, approximately 49 seconds in length, depicting an adult man, inserting his penis into the mouth of a prepubescent little girl. *Id.* ¶ 19.

2

b.    1fb53593-8d06-484e-b8ce-4a5e56186a3c.mp4: A video, approximately 1 minute and 8 seconds long, depicting an adult male penetrating a small child from behind with his penis. The child is prepubescent and appears to be approximately 2-4 years old. The child can be seen, multiple times, attempting to roll over or pull him/herself up; however, the adult man repeatedly uses his hand to push the child back, so she/he is laying on the mattress. *Id.*

The IP address utilized to upload the child sex abuse materials that were distributed by the second KIK account back to the same subscriber and street address as the most recent login to the Dropbox account and to the login for the first KIK account. *Id.* ¶ 20. That is, they were all associated with Defendant Donte Mintz and his Washington D.C. apartment on 28th Street, Southeast, in Washington D.C. *Id.*

At the time, Defendant Mintz used the vanity name Don Tae on his Facebook page and has a PayPal account with the email taemugga@icloud.com. *Id.* ¶ 21. Apple subscriber information obtained via subpoena indicates that the email address taemugga@me.com is associated with Mintz. *Id.* In April of 2021, Mintz moved to an apartment building nearby. *Id.*

On Thursday, July 8, 2021, law enforcement executed a federal search warrant at Defendant Mintz's apartment in Washington, D.C. Defendant Mintz agreed to speak to law enforcement and made the following statements:

a.    He acknowledged living at the prior apartment alone for the past year on 28th Street, Southeast in Washington, D.C. that was associated with the two KIK reports and the Dropbox report to NCMEC;

b.    He admitted to sharing, uploading, and viewing child sex abuse material;

c.      He stated that he had shared, saved, and uploaded images of girls between the ages of five and eighteen years old engaged in sexual activity;

d.      He acknowledged using the usernames greatwork14 and slinkbeezy14 (the two KIK accounts described above);

e.      He acknowledged sharing and/or possessing 75-100 images and videos depicting the sexual abuse of children;

f.      He admitted that he used the email taemugga@icloud.com;

g.      He stated that he had accessed links on Dropbox and Mega that contained child sex abuse material and been a part of groups on KIK and Telegram where child sex abuse material was shared;

h.      He further stated that he knew it was wrong when he viewed explicit images of children. *Id.* ¶ 22.

A forensic review of digital devices seized from Defendant Mintz's residence during the execution of a search warrant revealed that Defendant Mintz was in possession of files that depicted the sexual abuse of children. *Id.* ¶ 23. Specifically, a review of the MacBook with serial number C02PMFPMGFWM revealed approximately 855 files (418 images, 437 videos) containing child sexual abuse material. *Id.* Additionally, law enforcement located approximately 2,581 (1968 images, 613 videos) child exploitative and/or age difficult material files, and 82 CGI/anime files. *Id.* Defendant Mintz accessed and received this child sexual abuse material through communication applications, such as the encrypted application, Telegram. *Id.*

A general description of some of the files found on Defendant Mintz's MacBook include:

a.      A video that depicts a clothed toddler-aged girl with her hand on an adult man's penis. Later in the video, the girl's dress has been pushed up and her bare vagina is visible. The adult man attempts to insert his penis into the little girl's vagina.

b.      A video that depicts a child laying on their back; their face has been obscured by a black box. An adult male is on top of the child with his hand around the child's throat while he inserts his penis into the child's mouth.

c.      A video which depicts an adult male with his hand on the back of a toddler's head, pushing the toddler's mouth onto his penis.

d.      A still image with an adult male's penis in front of an infant who has what appears to be ejaculate on his/her face.

e.      A video which depicts a nude prepubescent girl on her hands and knees on top of a table. The girl's legs are tied to either side of the table exposing her vagina to the camera.

*Id.* ¶ 24.

A forensic review of Defendant Mintz's MacBook referenced above also revealed a screenshot from Telegram showing groups that appear to be dedicated to trading child sex abuse materials. Some of the group names are as follows: "Adolescentes solo 13-17," "Solo Gente con Nenas Propias," and "Cp sin limites." *Id.* ¶ 25.

In March 2023, Defendant Mintz's cellular phone, an iPhone 7 with serial number C6KSNJ3WHG70, was examined by law enforcement. *Id.* ¶ 26. A search of the cell phone revealed child sexual abuse material located in the Digital Camera Images folder. *Id.* Several of those videos appear to be visual matches for the child sexual abuse material that had been reported in the NCMEC reports discussed above. *Id.* Defendant Mintz's search history on this iPhone 7 revealed search terms such as "3d cp" and "3d cp mega links." *Id.*

In March 2023, Defendant Mintz's personal cellular phone, an iPhone 12 Max Pro with serial number G6TDL0UT0D49 was examined by law enforcement. *Id.* ¶ 27. A search of this cell phone revealed additional images and videos containing child sexual abuse materials, located in the Telegram application. *Id.* The search also revealed several online chats utilizing Telegram, during which Defendant Mintz received and distributed child sexual abuse images and videos. *Id.* These chats and interactions are summarized below:

a.      On May 24, 2021, Defendant Mintz distributed a video of a nude prepubescent female child sitting over a clothed adult male. The adult male's bare penis is exposed through the zipper of his pants, and the male's penis is inserted into the girl's mouth.

b.      On July 5, 2021, Defendant Mintz sent four videos to a Telegram group named after a 15-year-old Black girl. Video 1 depicts two minor females, including an identified minor victim ("MV"). Both girls remove their clothing in front of the camera. One of the girls then pulls down her pants and backs up toward the camera, exposing her bare buttocks and genitals. Video 2 depicts an adult male standing with his bare penis inside of MV's mouth. Video 3 depicts MV fully nude, on a sofa, with her legs spread and genitals exposed. MV can then be seen touching her genitals with her fingers and engaging in actual or simulated masturbation. Video 4 depicts MV on a sofa while an adult male penetrates MV's mouth with his penis. MV has been identified and was approximately 15 years old at the time Defendant Mintz distributed these videos in the Telegram group. Shortly after sharing these videos, Defendant Mintz sent the Telegram group a message stating, "well i got more waitin on y'all."

c.      On July 5, 2021, Defendant Mintz engaged in chat with another individual via Telegram. A portion of this chat follows:

> Other individual: Mi .name es Willy
>
> Mintz: sup
>
> Other individual: they expelled me from the group
>
> Other individual: and had the content to send
>
> Mintz: what kind.?
>
> Other individual: you can make it come in
>
> Other individual: From cp

The other individual then sent Defendant Mintz a video, which depicts a prepubescent female child crouching on a small table. An adult male is behind the child, and he penetrates the small girl's genitals with his penis. After receiving the video from this other individual, Defendant Mintz wrote:

> Mintz: send it here
>
> Mintz: my favorites

The Defendant pled guilty to one count of Attempted Receipt of Child Pornography on June 14, 2023. *Id.* ¶ 4. The government now files this Sentencing Memorandum, and respectfully requests that the Court impose a Guidelines sentence of or close to 151 months, to be followed by 10 years of supervised release.

## II.     The Sentencing Guidelines and Guidelines Analysis

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 961 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 543 U.S. at 244.

In post-*Booker* cases, the Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated the Defendant's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| Specific Offense Characteristics | |
| Depictions of minors under 12 (U.S.S.G. §2G2.2(b)(2)) | +2 |
| Knowingly engaged in distribution (U.S.S.G. §2G2.2(b)(3)(F)) | +2 |
| S&M or Infant/Toddler (U.S.S.G. §2G2.2(b)(4)(A)) | +4 |
| Use of a computer (U.S.S.G. §2G2.2(b)(6)) | +2 |
| Involved 600+ images (U.S.S.G. §2G2.2(b)(7)(D)) | +5 |
| | |
| Acceptance of responsibility (U.S.S.G. §3E1.1(a) & 3E1.1(b)) | -3 |

Total Adjusted Offense Level                                                                    34

*See* PSR ¶¶ 36-49.

The U.S. Probation Office calculated the Defendant's criminal history as a Category I, which is not disputed. *Id.* ¶ 52. Accordingly, the U.S. Probation Office calculated the Defendant's total adjusted offense level at 34, and his corresponding Guidelines imprisonment range at 151 to 188 months. *Id.* ¶¶ 49, 98.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case.

> Because they have been produced at Congress's direction, they
> cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide a helpful benchmark, and remain a necessary factor for the Court's consideration.

## III.    A Guidelines Sentence of 151 Months Accurately Reflects the 18 U.S.C. § 3553(a) Factors

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1]  These factors include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed –

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

---

[1] Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines serve only an advisory function. *Id.* at 245. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point. *Booker* did not change "how the Guidelines range is to be calculated." *United States v. Mattea*, 895 F.3d 762, 766 (D.C. Cir. 2018) (internal citations and quotations omitted).

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(3)     the kinds of sentences available;

(4)     the applicable sentencing guidelines range for the offense;

(5)     pertinent policy statements issued by the U.S. Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

### A.  The Nature and Circumstances of the Offense

The Defendant's conduct in this case is extremely serious. The Defendant not only attempted to receive child pornography, but he also distributed, solicited, and possessed an extensive collection of child sexual abuse material. This conduct went on minimally for at least and almost a year. The Defendant purposefully sought out multiple online communities (through multiple online applications) with other individuals with a sexual interest in children where he could interact with other like-minded offenders to discuss and share images and videos depicting the physical and sexual abuse of children. The Defendant personally solicited child pornography from members of the groups and sent images and videos to other participants of the group.

What makes the Defendant's criminal conduct so egregious is the fact that it has been perpetrated against the most vulnerable members of our society – children. Children captured in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each

and every time an individual views the images for their own sexual gratification. As eloquently explained by the Sixth Circuit in a child pornography case:

> . . . we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of . . . children who are forced into these roles.
> . . . every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-22 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Each one of the images and videos the Defendant accessed, distributed, discussed, and encouraged others in groups to distribute represents an innocent child victim who had the worst moments of their lives forever memorialized and spread to countless offenders all over the world via the internet. *See Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010) (finding that "[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"). In *New York v. Ferber*, the U.S. Supreme Court noted:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took

place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

The Defendant's conduct in seeking out groups of pedophiles and receiving and distributing *numerous* child pornography images and videos is extremely serious and dangerous. Within the Defendant's collection, over 230 known victims were identified. The conduct that brings the Defendant before the Court was not a one-time occurrence, nor a mistake. Rather, this offender intentionally found many online communities where he could solicit, receive, share, view, and collect child pornography. Given the extremely serious nature of the Defendant's criminal conduct, a Guidelines sentence is appropriate.

### B.  The History and Characteristics of the Defendant

The Defendant's lack of criminal history does not accurately reflect his history and characteristics given the nature of the offense in this matter. Prior to this offense, the Defendant was by all accounts a successful young man. The Defendant had many opportunities available to him and used his education and technological savviness in order to commit this horrible crime. The Defendant was only caught by law enforcement when law enforcement received CyberTips from Dropbox and KIK about the contents of the Defendant's accounts. The Defendant was successful in avoiding law enforcement detection until law enforcement received CyberTips about the contents of the Defendant's online accounts and subsequently seized and reviewed his electronic devices. Thus, the Defendant's lack of a criminal record *only* reflects his savvy and conniving ability to evade law enforcement detection, not an absence of criminal intent or criminal conduct. The Defendant's actions clearly demonstrate the need for a Guidelines sentence to appropriately address his criminal conduct.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The sexual exploitation of children, including online discussions about abuse, as well as the downloading, distributing, receiving, viewing, and possession of child sexual abuse material, has devastating consequences for the children depicted in these images and videos. Once they find their way onto the Internet, images and videos depicting the sexual abuse of a child will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade such images and videos for their own sexual gratification.

Furthermore, consumers and distributers of child pornography, like the Defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers and distributers contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259-60 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"); *see also United States v. Accardi*, 669 F.3d at 345 (D.C. Cir. 2012) (emphasizing that "child pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only exacerbated by the circulation of the materials.") In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007).

When enacting mandatory minimum penalties for those who produce and traffic in the sexual abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996). There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

The Defendant participated in a market and demand for materials depicting the rape and torture of real, and very young, children. The Court need only review the Victim Impact Statements from many of the victims in the images and videos he possessed in order to understand the devastating effect that the production and dissemination of those videos actually has had on real child victims. Over 230 victims were identified within the Defendant's collection, as well as additional victims who could not be identified by law enforcement. Therefore, with respect to 18

U.S.C. § 3553(a)(2)(A), a Guidelines sentence of 151 months of incarceration accurately reflects the seriousness of the Defendant's conduct, promotes respect for the law, and provides just punishment for the Defendant's offense.

### D.  The Need for the Sentence to Afford Adequate Deterrence and to Protect the Public from Future Crimes of the Defendant

Deterrence and protecting the public from future crimes of the Defendant is of particular import for three reasons. First, serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production.

> The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672.

Second, both Congress and the courts have recognized the high recidivism rates for these types of offenders. *See* Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L. Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); *Accardi*, 669 F.3d at 346 (noting that "a number of circuits have upheld [sentences] . . . for defendants convicted of possession of child pornography based on the same general concerns about recidivism") (citing *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008) (noting that, there, the "sentence [was based] on general concerns about recidivism and protection of the public."))); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine

. . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children") (citations omitted)).

Third, there is an undeniable link between sexual contact offenses and the receipt and distribution of child pornography. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." *See* Lanning, Kenneth V., *Child Molesters: A Behavioral Analysis – For Professionals Investigating the Sexual Exploitation of Children*, Office of Juvenile Justice and Delinquency Prevention, Fifth Ed. 2010, at 107.

The Defendant was actively seeking out, discussing, and sharing material depicting the sexual abuse of children for a lengthy period of time. The Defendant was a member of many online communities wherein he exchanged and discussed sexual abuse material. He then saved his child sexual abuse material to a Dropbox account and to electronic devices that he could access anywhere. The *only* thing that stopped the Defendant from continuing to offend was the involvement of law enforcement. For these reasons, a significant sentence, as contemplated by the Guidelines, is necessary to protect the public from further crimes by this Defendant.

### F.  The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the government's recommended sentence is within the Sentencing Guidelines range, a sentence that the Defendant agreed was a reasonable sentence in his Plea Agreement.

Imposing a Guidelines sentence of 151 months in this case would not create an unwarranted disparity.

It should also be noted that this Defendant's criminal offense includes behavior and conduct that the Sentencing Commission deems to be "aggravating factors" that courts can consider at sentencing when determining the level of danger a particular offender poses to the community.  *See* Federal Sentencing of Child Pornography Non-Production Offenses (https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses).  These aggravating factors include: (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense.  This Defendant received, distributed, and possessed images depicting the sexual abuse of prepubescent and even infant/toddler-aged children. His extensive collection of child pornography included hundreds of images and videos and included very young children that were being physically harmed and tortured. The content was egregious.

Further, the Defendant actively sought out groups and individuals with a sexual interest in children, and he has communicated with other like-minded offenders using several messaging applications, including one that utilizes end-to-end encryption, for at least many, many months. Simple to say, the Defendant's involvement with other offenders and internet communities was egregious and ought to be strongly considered by this Court. Although there are no allegations of hands-on abuse, the government is concerned about the Defendant's prior and future access to children and notes that these types of crimes are underreported and frequently are not disclosed by

victims. For all of these reasons, there is some evidence to suggest that this Defendant engaged in even worse conduct than what Guideline §2G2.2 considers and attempts to adequately address. These aggravating factors should be weighed against any mitigating factors when fashioning an appropriate sentence for this offender.

When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017). Given all of these factors, a sentence as the Government is recommending avoids creating an unwarranted sentencing disparity between defendants with similar records who have been convicted for similar conduct.

## IV.     The Victims are Entitled to Restitution

Prior to December 7, 2018, Title 18 U.S.C. § 2259 directed that, "notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offenses under this chapter." 18 U.S.C. § 2259(a); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution was defined to include "the full amount of the victim's losses," which includes any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

(E) Attorneys' fees, as well as other costs incurred; and

(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015). The Court may not decline to issue an order under this section because of the economic circumstances of the defendant. 18 U.S.C. § 2259(B)(i).

In *Paroline v. United States*, 572 U.S. 434 (2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 572 U.S. at 439. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps. First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 448. Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 457-59. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 455, - the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 458. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* at 459. That is, in part, because a restitution order under § 2259

serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.* Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id.* The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id.* The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id.*

The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id.* "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id.* at 460.

Congress has since amended Section 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000.00. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (December 7, 2018). As detailed in the Restitution Request materials submitted to this Court under seal, some of the victims depicted in the images and videos the Defendant uploaded, viewed, and possessed are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income,

loss of housing, and for various medical expenses. *See United States v. Monzel*, 930 F.3d at 486 (D.C. Cir. 2019) (noting that *Paroline*'s § 2259(b) restitution calculation is based on the defendant's "contribution to [the victim's] '*general* losses,'" and that the district court's calculation should be "a matter of 'discretion and sound judgment,'" considering the *entire totality* of the defendant's contributions, rather than a narrow, unnecessarily precise "exercise in long division") (emphasis added) (citing *Paroline*, 572 U.S. at 459-60)). The following victims in these known series of images have made restitution requests which have been submitted separately under seal to the Court: 2crazygurls, HG1, Sweet Pink Sugar, Sweet White Sugar, Tara, and ZooFamily1. For the reasons set forth above, the government respectfully requests that the Court order a restitution amount of $40,000.00 to be paid by the Defendant.

## V.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, each of these factors requires a lengthy sentence of incarceration within the sentencing guideline range. Based on these factors, the government respectfully requests that the Court impose a Guidelines sentence of or close to 151 months of incarceration followed by a period of 10 years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:      */s/ Rachel Forman*
RACHEL FORMAN
VA Bar Number 89169
Assistant United States Attorney
U.S. Attorney's Office
601 D Street, NW
Washington, D.C.
Office: 202-252-6916
Rachel.forman2@usdoj.gov